UNITED STATES DISTRICT COURT        <span>FOR ONLINE PUBLICATION ONLY</span>
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
DAVID SIMPKINS,

                  Petitioner,              MEMORANDUM
                                           AND ORDER
                                           08-CV-1086 (JG)

      -against-

THE PEOPLE OF NEW YORK STATE,

                  Respondent.
------------------------------------------------------------x
A P P E A R A N C E S :

      DAVID SIMPKINS
           03A2231
           Greenhaven Correctional Facility
           P.O. Box 4000
           Stormville, NY 12582
           Petitioner, *Pro Se*

      KATHLEEN M. RICE
           District Attorney
           Nassau County
           262 Old County Road
           Mineola, NY 11501
      By:    Tammy J. Smiley
           Lauren Del Giorno
           Attorney for Respondent

JOHN GLEESON, United States District Judge:

      David Simpkins petitions *pro se* for a writ of habeas corpus pursuant to 28 U.S.C.

§ 2254, seeking to overturn the judgment of the New York Supreme Court, Nassau County,

convicting him of seven counts of robbery.  Simpkins argues that there was insufficient evidence

to support the jury's verdicts; that the failure of one victim to testify against him violated his

Confrontation Clause rights; that the verdict was against the weight of the evidence due to

fabrications in the case against him; and that African-Americans were underrepresented in his jury and jury pool. For the reasons that follow, the petition is denied.

BACKGROUND

A.    *The Offense Conduct*

Simpkins was convicted of a series of armed robberies committed over an eleven-week period in 2001. The government's evidence at trial established the following narrative. On March 3, 2001, Simpkins held a sharp object to the throat of the owner of the Penn Convenience Store in Hempstead, New York and stole money from the store's cash register and the owner's wallet. On March 17, 2001, he threatened the owner of another Hempstead store with what he claimed to be a gun inside a paper bag, and stole the owner's wallet. On March 21, 2001, he entered a Sunoco mini-mart in Hempstead, threatened the three employees with what he claimed to be a gun inside a plastic bag, and stole money from two cash registers. On April 19, 2001, Simpkins went back to the Penn Convenience Store and displayed what he claimed to be a gun inside a paper bag. Simpkins grabbed money from one of the cash registers and assaulted an employee who interfered, elbowing the employee and then striking his head with the hard object inside the paper bag.

On May 20, 2001, Simpkins returned to the Sunoco mini-mart and held what appeared to be a handgun to the head of one of the employees. In response to his demands, Simpkins was given two employees' wallets and money from the cash register, which he placed in a yellow plastic bag. This robbery was captured on videotape. Simpkins was apprehended nearby after fleeing on foot. Near the spot where Simpkins was hiding, the police found an air gun, two wallets, two piles of cash, and a yellow plastic bag. Within minutes, a witness to that

2

day's robbery identified him in a showup.  Later that day, Simpkins was picked out of a lineup by witnesses to the previous robberies.  Several weeks later, a witness to both of the Sunoco robberies identified Simpkins in a second lineup.

B.      *The Procedural History*

Simpkins was tried and convicted of three counts of robbery in the first degree and four counts of robbery in the second degree.  The government's evidence at trial included eyewitness testimony for every robbery, a surveillance videotape of the second Sunoco robbery, and a videotape that showed Simpkins at the time and place of one of the other robberies.  He was sentenced, as a persistent violent felony offender, to an indeterminate term of twenty years to life for each count.  At the trial court's direction, the prison terms for the first two counts ran consecutively to one another, and the terms imposed for the remaining counts ran concurrently with each other and with the second term of imprisonment.

Simpkins appealed his conviction, arguing that the evidence was legally insufficient to establish his identity; that the evidence was legally insufficient to establish his guilt with respect to one robbery count because the victim, Ali Qasim Shah, did not testify and because no property was taken directly from Shah; that his Confrontation Clause right was violated by Shah's failure to testify at trial; that his jury and jury pool under-represented African-Americans; and that the verdict was against the weight of the evidence.  On November 13, 2007, the Appellate Division, Second Department, affirmed his conviction, holding that the verdict was supported by sufficient evidence and not against the weight of the evidence, and that his other contentions were unpreserved for review and, in any event, without merit.  *People v. Simpkins* (*Simpkins I*), 846 N.Y.S.2d 242, 243 (2d Dep't 2007).

Simpkins sought leave to appeal to the New York Court of Appeals. His application sought review only of his Confrontation Clause claim and his claims regarding the weight and sufficiency of the evidence, and not of his claim regarding the jury or jury pool. The New York Court of Appeals denied leave to appeal, *People v. Simpkins* (*Simpkins II*), 10 N.Y.3d 771 (2008) (Pigott, J.), and denied his motion for reconsideration of its denial of leave to appeal, *People v. Simpkins* (*Simpkins III*), 10 N.Y.3d 870 (2008) (Pigott, J.).

Simpkins filed this petition, raising all of the grounds he raised on direct appeal.

DISCUSSION

A.    *The Legal Standard for § 2254 Petitions*

1.    *Review of Procedurally Defaulted Claims*

A state court's explicit reliance on a procedural bar preventing adjudication of the merits of a claim generally constitutes an independent and adequate state law ground for the state court's judgment, precluding federal review. *See Harris v. Reed*, 489 U.S. 255, 260-62 (1989) (explaining rationale for habeas corpus procedural default rule); *see also Coleman v. Thompson*, 501 U.S. 722, 750 (1991) (noting a state's interest in "channeling the resolution of claims to the most appropriate forum, in finality, and in having an opportunity to correct its own errors"). However, there are several circumstances in which a federal claim disposed of by a state procedural rule will still be reviewable on a federal petition for habeas corpus.

First, a petitioner is entitled to review of a procedurally defaulted claim if he can show "cause for the default and actual prejudice as a result of the alleged violation of federal law." *Coleman*, 501 U.S. at 750. A petitioner may establish cause by showing "'that the factual basis for a claim was not reasonably available to counsel . . . or that some interference by

4

officials . . . made compliance impracticable.'" *Id.* at 753 (internal quotation marks omitted) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). To show prejudice, a petitioner must demonstrate that the alleged error worked to his "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Torres v. Senkowski*, 316 F.3d 147, 152 (2d Cir. 2003) (internal quotation marks omitted).

Second, if a petitioner cannot show cause and prejudice, his procedural default may still be excused if he can demonstrate that a fundamental miscarriage of justice would result from a failure to hear the claim on the merits -- that is, "that he is actually innocent of the crime for which he has been convicted." *Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002) (citing *Schlup v. Delo*, 513 U.S. 298, 321 (1995)). This ground for excusing procedural default should be applied only in "extraordinary" cases, as courts deem substantial claims of actual innocence "extremely rare." *Schlup*, 513 U.S. at 321-22.

Third, a procedural rule can fail to be a state ground "adequate" to protect a judgment from federal collateral attack in rare circumstances.[1] There is a "limited category" of "exceptional cases where exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question." *Lee v. Kemna*, 534 U.S. 362, 376 (2002). Whether or not a procedural rule is adequate to prevent a federal court from reaching the merits of a claim "is determined with reference to the 'particular application' of the rule; it is not enough that the rule 'generally serves a legitimate state interest.'" *Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003) (quoting *Lee*, 534 U.S. at 387). The requirement of adequacy is intended

---

[1] The Supreme Court has tended not to characterize either cause and prejudice or a miscarriage of justice as affecting the adequacy of the procedural ground, though in a sense a procedural rule is not "adequate" to sustain a state court judgment when a habeas court looks past it due to cause and prejudice or a miscarriage of justice. *See generally Middleton v. Ercole*, No. 07-CV-2810 (JG) (VVP), 2007 WL 4264578, at *5 n.3 (E.D.N.Y. Dec. 3, 2007).

to prevent state courts from avoiding "deciding federal issues by invoking procedural rules that they do not apply evenhandedly to all similar claims." *Cotto*, 331 F.3d at 239 (quotation marks omitted).

Accordingly, the question courts must ask to determine adequacy is "whether application of the procedural rule is firmly established and regularly followed in the specific circumstances presented in the case, an inquiry that includes an evaluation of the asserted state interest in applying the procedural rule in such circumstances." *Id.* at 240 (quotation marks omitted). In determining the adequacy of the application of a procedural rule, courts look to the following "guideposts":

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

*Id.*; *see also Lee*, 534 U.S. at 381-83 (first articulating these factors).

2.      *Review of State Court Adjudications on the Merits Under AEDPA*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") circumscribes the scope of federal habeas review of state convictions regarding claims the state court adjudicated on the merits. 28 U.S.C. § 2254(d). A federal habeas court may overturn a state court's ruling on the merits of a claim only if the state decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(1).[2]

The Supreme Court has interpreted the phrase "clearly established Federal law, as determined by the Supreme Court of the United States" to mean "the holdings, as opposed to the dicta," of its decisions at the time of the state court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13.

A decision is "an unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.* at 413. An unreasonable application is more incorrect than a merely erroneous one, but while "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence," *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quotation marks omitted).

AEDPA's limited scope of review applies whenever a state court disposes of a state prisoner's federal claim on the merits and reduces its disposition to judgment, regardless of whether it refers to federal law in its decision. *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001).

---

[2] This limited scope of review is often referred to as "AEDPA deference." *E.g.*, *Jimenez v. Walker*, 458 F.3d 130, 135 & n.2 (2d Cir. 2006).

B.       *The Sufficiency of the Evidence*

As the Appellate Division reviewed Simpkins's claim of insufficiency on the merits, *Simpkins I*, 846 N.Y.S.2d at 242-43, the scope of my review is limited by AEDPA. "A defendant challenging the sufficiency of the evidence supporting a conviction faces a 'heavy burden.'" *United States v. Glenn*, 312 F.3d 58, 63 (2d Cir. 2002) (quoting *United States v. Matthews*, 20 F.3d 538, 548 (2d Cir. 1994)). I may overturn a conviction on that basis "only if, after viewing the evidence in the light most favorable to the Government and drawing all reasonable inferences in its favor," I find that "no rational trier of fact could have concluded that the Government met its burden of proof." *Glenn*, 312 F.3d at 63 (quotation marks omitted). "'[T]he relevant question is whether . . . *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). My analysis considers "the evidence in its totality, and the Government need not negate every theory of innocence." *Glenn*, 312 F.3d at 63 (quotation marks omitted).

In order to "avoid usurping the role of the jury," *United States v. Autuori*, 212 F.3d 105, 114 (2d Cir. 2000) (quotation marks omitted), I must "defer to the jury's assessment of witness credibility and the jury's resolution of conflicting testimony" when reviewing the sufficiency of the evidence. *Glenn*, 312 F.3d at 64 (quotation marks omitted); *see also, e.g.*, *Autuori*, 212 F.3d at 114 ("We may not substitute our own determinations of credibility or relative weight of the evidence for that of the jury."). The relevant inquiry is "whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt." *Autuori*, 212 F.3d at 114 (quotation marks omitted).

Where a fact to be proved is also an element of the offense, however, "it is not enough that the inferences in the government's favor are permissible." *United States v. Martinez*, 54 F.3d 1040, 1043 (2d Cir. 1995). I "must also be satisfied that the inferences are sufficiently supported to permit a rational juror to find that the element, like all elements, is established beyond a reasonable doubt." *Id.* "[I]f the evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, then a reasonable jury must necessarily entertain a reasonable doubt." *Glenn*, 312 F.3d at 70 (quotation marks omitted).

Simpkins seems to argue insufficiency on two grounds, neither of which is persuasive. First, to the extent he argues that the evidence was insufficient to convict him of the robberies generally, his claim verges on frivolousness. The jury heard eyewitness testimony establishing his participation in each charged robbery. It was entitled to credit this testimony and convict him of each robbery on this basis.

Simpkins's second basis for claiming insufficiency is more narrowly focused, but fares no better. He appears to challenge the sufficiency of the evidence establishing that he robbed Shah for two reasons. First, he claims that Shah's failure to testify renders the evidence insufficient to convict him of this. This assertion is wholly without merit, considering that two eyewitnesses testified that Simpkins entered the store on May 20, 2001, held a gun to Shah's head, demanded all of the witnesses' money, and received their wallets as well as money from the cash register. The jury could have credited this testimony and convicted Simpkins of robbing Shah on that basis. Second, Simpkins claims that there is no evidence that Simpkins acquired any of Shah's property. However, the jury could have credited the witness testimony that Shah

was a store clerk at the Sunoco store, and thus concluded that Shah had a right to possess the money in the cash register which, while not absolute, was superior to Simpkins's. *See* N.Y. Penal Law § 160.10(2) (defining robbery in the second degree as forcible stealing while displaying what appears to be a weapon); N.Y. Penal Law § 160.00 ("A person forcibly steals property when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of: . . . (2) [c]ompelling the owner of such property or another person to deliver up the property . . . ."); N.Y. Penal Law § 155.05(1) ("A person steals property and commits larceny when, with intent to deprive another of property or to appropriate same to himself or to a third person, he wrongfully takes, obtains or withholds such property from an owner thereof."); N.Y. Penal Law § 155.00 (5) ("When property is taken, obtained, or withheld by one person, an 'owner' thereof means any person who has a right to possession thereof superior to that of the taker, obtainer, or withholder.").

Accordingly, the Appellate Division did not unreasonably apply *Jackson* when it found the evidence sufficient to support Simpkins's conviction on all counts.

C.      *The Weight of the Evidence*

As the Appellate Division ruled on the merits of Simpkins claim that his conviction was against the weight of the evidence, *Simpkins I*, 846 N.Y.S.2d at 243, the scope of my review is limited by AEDPA.  A challenge to a conviction based on the weight of the evidence presents an issue of state law only and thus provides no basis on which to grant habeas relief.  *See, e.g.*, *Guity v. Ercole*, No. 07-CV-728 (RPP), 2007 WL 3284694, at *6 (S.D.N.Y. Nov. 6, 2007) (noting that challenges to the weight of the evidence are "not cognizable on habeas

review," citing cases); *Norris v. Fischer*, No. 06-CV-2190 (JG), 2007 WL 1452127, at *6-*7 (E.D.N.Y. May 15, 2007) (similar).

However, Simpkins's mention of fabrications in the prosecution's case raises the possibility that he seeks to claim that he was denied due process through the introduction of perjured testimony. Such a claim, on habeas review, would require a showing (1) that "false testimony was produced," (2) that the "testimony either was or should have been known to the prosecution to be false," (3) that "the testimony went uncorrected," and (4) that the false testimony was material. *Shih Wei Su v. Filion*, 335 F.3d 119, 127 (2d Cir. 2003). Even if he intends to raise such a claim, Simpkins does not approach this standard. The "fabrications" he complains of are trivial inconsistencies, *see* Pet'r's Reply 19 (claiming that one witness gave inconsistent statements about whether he viewed a photograph or a videotape of the incident); *id.* at 20 (claiming that one witness estimated the duration of a robbery as two minutes while another estimated four minutes); failures of memory, *id.* at 19 (claiming that two witness did not recall various points); or mere semantic quibbles, *id.* at 20-21 (complaining that a police officer referred to the series of robberies as a "pattern" despite such inconsistencies as the lack of a regular time of day or day of the week and "clothing of varying color," as well as minor inconsistencies in suspect descriptions). Nothing in Simpkins's petition comes close to establishing that Simpkins was denied a fair trial due to the presentation of perjured testimony.

D.      *The Confrontation Clause*

Although the Appellate Division held that Simpkins's Confrontation Clause claim was "unpreserved for appellate review and, in any event, . . . without merit," *Simpkins I*, 846 N.Y.S.2d at 243, the respondent does not take the position that it is unpreserved. *See* Resp.'s

Mem. 20 n.6. ("Notwithstanding the Appellate Division's conclusion . . . , the People do not

now -- nor did they ever – argue that this claim was unpreserved for appellate review."). The

Appellate Division's language invokes a procedural bar, notwithstanding its reference to the

merits. *See Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810 n.4 (2d Cir. 2000) ("[W]here a

state court says that a claim is 'not preserved for appellate review' and then rules 'in any event'

on the merits, such a claim is not preserved."). An incorrect application of a procedural bar is

inadequate to prevent habeas review, *see Ojar v. Greene*, No. 07-CV-3674 (JG), 2008 WL

428014, at *9 (E.D.N.Y. Feb. 15, 2008) (citing *Cotto*, 331 F.3d at 240), and as I have previously

concluded, the state court's discussion of the merits "in any event" is not subject to AEDPA's

limited scope of review, *see Ojar*, 2008 WL 428014, at *9-*11 & n.6 (reaching this conclusion

in light of *Jiminez v. Walker*, 458 F.3d 130 (2d Cir. 2006)).

Thus, I review *de novo* Simpkins's claim that the Confrontation Clause was

violated by Shah's failure to testify against him, and find it spurious. No out-of-court statements

by Shah were introduced as evidence against Simpkins, and so Shah was not a "witness[]

against" Simpkins within the meaning of the Confrontation Clause. U.S. Const. amend. VI; *cf.*

*Crawford v. Washington*, 541 U.S. 36, 42-43 (2004) ("One could plausibly read 'witnesses

against' a defendant to mean those who actually testify *at trial*, those whose statements are

offered *at trial*, or something *in-between*." (emphasis added, citations omitted)).

E.      *The Composition of the Jury and Jury Pool*

Simpkins's claims regarding the racial makeup of his jury and jury pool are

procedurally barred for two reasons. At trial, Simpkins raised the objection regarding his jury

pool after the commencement of jury selection, in violation of N.Y. Crim. Proc. Law §

270.10(2), on which the trial court relied to dispose of his challenge. This evidently led the Appellate Division to find his claim procedurally barred. *Simpkins I*, 846 N.Y.S.2d at 243. Second, Simpkins omitted his claims regarding the jury pool and his jury from his application for leave to appeal to the New York Court of Appeals. Accordingly, they are unexhausted and can no longer be exhausted, and are deemed procedurally defaulted. *See Jones v. Keane*, 329 F.3d 290, 295-96 (2d Cir. 2003) (finding that a petitioner procedurally defaulted a claim by failing to include it in his application for leave to appeal to the New York Court of Appeals, in light of the court's rule prohibiting multiple requests for leave to appeal). Simpkins demonstrates no inadequacy of either procedural bar and no cause for default, and fails to make a sufficient threshold showing of actual innocence to excuse his procedural default. Thus, I am barred from reaching the merits of these claims.[3]

## CONCLUSION

For the reasons stated above, the petition for a writ of habeas corpus is denied. Because Simpkins has failed to make a substantial showing that he was denied a constitutional right, no certificate of appealability shall issue.

So ordered.

John Gleeson, U.S.D.J.

Dated: July 31, 2008
       Brooklyn, New York

---

[3]     I note, however, that claims regarding the racial makeup of a jury do not implicate a federal question when -- as Simpkins's counsel admitted here, *see* Tr. 146 (acknowledging that he had not shown a pattern of discrimination and not raising a specific challenge of discriminatory use of peremptory challenges) -- there is no showing of intentional discrimination. See *Taylor v. Louisiana*, 419 U.S. 522, 538 (1975) ("Defendants are not entitled to a jury of any particular composition . . . .").